**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 20, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FREDY AUGUSTO RAMIREZ-NAVAS,

    Defendant - Appellant.

No. 23-2141
(D.C. No. 2:23-CR-00443-MIS-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **FEDERICO**, Circuit Judges.
_____

Fredy Augusto Ramirez-Navas pleaded guilty, without benefit of a plea

agreement, to illegal reentry after being previously removed following a felony

conviction, in violation of 8 U.S.C. § 1326(a)(1) and (b)(1).  The district court

sentenced Mr. Ramirez-Navas to an above-guideline sentence of 48 months, to be

followed by a two-year term of supervised release.  Mr. Ramirez-Navas now appeals,

arguing the district court erred in refusing to accept the parties' plea agreement, and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

also challenging the procedural and substantive reasonableness of his sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.

I

On January 25, 2023, United States Border Patrol (USBP) agents found Mr. Ramirez-Navas in Doña Ana County near Santa Teresa, New Mexico. Mr. Ramirez-Navas admitted he was a citizen of Guatemala and lacked legal authorization to enter or remain in the United States. The USBP agents confirmed this information and determined that Mr. Ramirez-Navas was first ordered removed or deported from the United States on August 9, 2017. The USBP agents also determined that in September 2021, Mr. Ramirez-Navas was convicted of illegal reentry of a removed alien.

Following his arrest, a criminal complaint was filed against Mr. Ramirez-Navas charging him with illegal reentry after being previously deported following a felony conviction, in violation of 8 U.S.C. § 1326(a)(1) and (b)(1).

In April 2023, Mr. Ramirez-Navas and the government entered into what was titled a "FAST TRACK PLEA AGREEMENT." R. vol. I at 10. Under the terms of that agreement, Mr. Ramirez-Navas agreed to plead guilty to an information charging him with illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b). The parties also agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), "to a sentence within the resulting sentencing guideline range after the application of adjustments for specific offense characteristics," "minus a downward

adjustment for acceptance of responsibility, and minus a two-level downward departure pursuant to USSG § 5K3.1" in accordance with the District of New Mexico's early disposition program. *Id.* at 13. The magistrate judge held a change of plea hearing but deferred acceptance of the plea agreement.

A presentence investigation report (PSR) was prepared and submitted to the district court and the parties. The PSR calculated a total offense level of 8, a criminal history score of 7, a criminal history category of IV, and an advisory guideline imprisonment range of 10 to 16 months. In recounting Mr. Ramirez-Navas's criminal history, the PSR noted that, in addition to his 2021 federal conviction for reentry of a removed alien, Mr. Ramirez-Navas had three prior convictions from the State of Texas: a 2019 conviction for assault; a 2021 conviction for criminal trespass of a habitation; and a 2022 conviction for assault causing bodily injury to a family member.

The PSR described the conduct underlying each of these three state convictions. With respect to the 2019 assault conviction, the PSR noted, in relevant part, that the victim was Mr. Ramirez-Navas's brother-in-law, Rodrigo Molina. Mr. Molina reported to the police that Mr. Ramirez-Navas pushed him against a wall and then punched him in the face multiple times, causing him to blackout. The PSR noted that Mr. Molina sustained numerous injuries to his face, including a laceration over his right eye, bruises to his eyes, a swollen cheek and upper lip, and a bloody nose.

3

As for the 2021 criminal trespass conviction, the PSR noted, in relevant part, that on November 21, 2020, Mr. Ramirez-Navas knocked on the door of an apartment and, when the victim answered, forced his way into the apartment asking for an individual by the name of Guillermo. The victim informed Mr. Ramirez-Navas that Guillermo no longer lived in the apartment. That led to an altercation between Mr. Ramirez-Navas and the victim. The victim's roommate was able to separate the two men and Mr. Ramirez-Navas left the apartment. Shortly thereafter, however, Mr. Ramirez-Navas reentered the apartment on his own and began attacking the victim. More specifically, Mr. Ramirez-Navas threatened to kill the victim, then lunged at him with a large kitchen knife and stabbed him in the left side of his chest. After doing so, Mr. Ramirez-Navas then grabbed the victim's neck and began choking him with one hand, while still holding the knife in his other hand. The victim fell onto a bed and Mr. Ramirez-Navas got on top of the victim and continued choking him. Only when the victim's roommate stated he was calling the police did Mr. Ramirez-Navas drop the knife and leave the apartment. Mr. Ramirez-Navas was initially charged with the felony offense of burglary of a habitation with intent to commit assault in the first degree, but ultimately pleaded guilty to the lesser included offense of criminal trespass of a habitation.

Finally, with respect to the 2022 assault conviction, the PSR noted that in late January 2022, Mr. Ramirez-Navas, with the assistance of his brother, assaulted Mr. Molina by punching him repeatedly in the face and body and stabbing him in the abdomen (the PSR noted it was unclear which of the two men was responsible for

4

stabbing Mr. Molina). When police responded to the scene of the crime and began questioning Mr. Ramirez-Navas and his brother, Mr. Ramirez-Navas attempted to flee on foot and then, when apprehended, attempted to resist arrest. During a post-arrest search of Mr. Ramirez-Navas's truck, law enforcement officers found a kitchen knife covered by a sock. Mr. Ramirez-Navas's common-law wife, who was Mr. Molina's sister, told the police she was fearful of Mr. Ramirez-Navas retaliating against her and her family for cooperating with the police.

Mr. Ramirez-Navas objected to the accuracy of the PSR's descriptions of the conduct underlying his three state criminal convictions and provided his own unsworn statements refuting those descriptions. The government responded to Mr. Ramirez-Navas's objections, submitted police reports for all three prior offenses, and submitted additional photographic evidence relating to the 2020 and 2022 offenses. The government argued that the police reports and evidence confirmed that the PSR's descriptions of the prior offenses were accurate.

At the outset of the sentencing hearing, the district court addressed Mr. Ramirez-Navas's objections to the PSR. Mr. Ramirez-Navas argued only that the police reports from his three prior offenses constituted inadmissible hearsay. The district court, after determining the reports were obtained by the government directly from the Austin (Texas) Police Department, overruled Mr. Ramirez-Navas's hearsay objections. In doing so, the district court concluded the police reports and supporting evidence bore sufficient indicia of reliability. In particular, the district court noted the police reports were very detailed and included consistent statements from

multiple witnesses.  The district court also found that Mr. Ramirez-Navas's unsworn statements made through his counsel in opposition to the facts recounted in the PSR were not reliable.  The district court in turn emphasized that it was "not considering any of the unpled-to facts as part of a conviction in this case," but rather "would consider it only pursuant to the 3553(a) factors, the history and characteristics of the defendant."  R. vol. III at 19.

The district court then advised the parties that it was rejecting the Rule 11(c)(1)(C) plea agreement because, in its view, the parties' proposed sentence of 16 months' imprisonment was not "sufficient . . . under the 3535(a) factors."  *Id.* at 27.  Although the district court advised Mr. Ramirez-Navas that he could withdraw his plea, Mr. Ramirez-Navas chose to plead guilty without benefit of the plea agreement and to proceed with sentencing.

In announcing its sentence, the district court found the PSR's descriptions of the prior offenses "[we]re accurate" and "that the Government . . . present[ed] sufficient evidence that ha[d] indicia of reliability to show that these facts more likely than not did occur."  *Id.* at 37.  The district court also noted that Mr. Ramirez-Navas quickly returned to the United States "after multiple violent attacks against others, including two cases that involved stabbing."  *Id.*  Further, the district court emphasized that the offense of conviction was Mr. Ramirez-Navas's "fifth conviction in the United States, his second reentry, and [that] many of his prior cases involved violence."  *Id.* at 38.  In addition, the district court found that a within-Guideline sentence would not "reflect the seriousness of this offense, coming

6

back into the country after multiple violent convictions," would not "promote any respect for the law," and would not "provide just punishment for the offense." *Id.* at 38–39. Ultimately, the district court sentenced Mr. Ramirez-Navas to a term of imprisonment of 48 months, to be followed by a two-year term of supervised release.

Following the entry of final judgment, Mr. Ramirez-Navas filed a timely notice of appeal.

## II

## A

In his first issue on appeal, Mr. Ramirez-Navas argues that the district court erred in rejecting the parties' Rule 11(c)(1)(C) plea agreement based "solely upon hearsay statements that were not sufficiently reliable to be considered at sentencing." Aplt. Br. at 5. We disagree.

A district court "has broad discretion to reject" a Rule 11(c)(1)(C) plea agreement "if (among other things) the court considers the agreement to be unfair." *United States v. Aragon*, 922 F.3d 1102, 1114 n.2 (10th Cir. 2019) (Holmes, J., concurring); *see United States v. White*, 765 F.3d 1240, 1248 (10th Cir. 2014) ("Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion." (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion))). Only if a district court accepts a Rule 11(c)(1)(C) plea agreement is it bound by the terms of that agreement. *See* Fed. R. Crim. P. 11(c)(1)(C) (noting that a plea agreement for a specific sentence or

7

sentencing range under that subsection "binds the court once the court accepts the plea agreement").

A district court may, "[i]n resolving any dispute concerning a factor important to the sentencing determination," including the acceptance of a Rule 11(c)(1)(C) plea agreement, "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). Under this rule, we have held that "[h]earsay statements . . . may be considered . . . if they bear some minimal indicia of reliability.'" *United States v. Montano*, – F.4th –, 2024 WL 3504511 at *7 (10th Cir. July 23, 2024) (quoting *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012)).

"We review for clear error a district court's assessment of the reliability of evidence" presented at sentencing. *United States v. Martinez*, 824 F.3d 1256, 1261 (10th Cir. 2016). To constitute clear error, the district court's determination must be found to be "simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district" court. *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (quoting *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003)).

The district court in this case determined the police reports that formed the basis for the PSR's factual descriptions of Mr. Ramirez-Navas's three prior crimes bore sufficient indicia of reliability because (a) they included detailed descriptions of the events giving rise to the crimes, (b) they also contained statements from multiple

8

witnesses that corroborated each other, and (c) two of the reports (from 2020 and 2022) were further corroborated by photographic evidence submitted by the government.

After reviewing the record on appeal, we conclude the district court did not commit clear error in assessing the reliability of the police reports. As the district court noted, all three police reports contained detailed descriptions of the events leading to Mr. Ramirez-Navas's arrests, including, in each of the three instances, personal observations from the responding police officers regarding the crime scenes, the physical state of the victims,[1] and witness statements.[2] In all three instances, the officers' observations, the physical evidence, and the witness statements largely corroborated each other. Finally, the police reports related to the 2020 and 2022 offenses were further corroborated by photographic evidence that was obtained by the government from the Austin Police Department and submitted to the district court. That evidence included photographs of the stab wound suffered by the victim of the 2020 assault, crime scene photographs from the 2022 offense, photographs of

---

[1] For example, one of the two officers who responded to the scene of the 2019 assault noted in the report that he spoke with the victim and observed multiple injuries on the victim's face, including a large, bleeding laceration over his right eye, bruises on or near both eyes, a bloody nose, and swelling on his right cheek and upper lip.

[2] There were no eyewitnesses to the 2019 assault, but the victim in the 2019 assault reported that Mr. Ramirez-Navas pushed him against a wall and struck him in the face multiple times with a closed fist, causing him to blackout. As for the 2020 and 2022 offenses, officers spoke to the victims, as well as eyewitnesses to the offenses.

the injuries suffered by the victim of the 2022 offense, and photographs of

Mr. Ramirez-Navas at the scene of the 2022 offense, including a photograph of

blood on the outside of his right hand.

B

In his second issue on appeal, Mr. Ramirez-Navas challenges the district

court's reliance on the statements contained in the three prior police reports "as the

primary basis for imposing a sentence that was three times longer than the maximum

guideline sentence." Aplt. Br. at 1.

We construe this argument as a challenge to the procedural reasonableness of

the sentence and, in turn, to the district court's assessment of the reliability of the

police reports and related evidence that were presented by the government at

sentencing. *See United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013)

("Because unreliable hearsay evidence can result in a sentence based on erroneous

facts, we construe Ruby's argument as an objection that his sentence was

procedurally unreasonable."). "We review a party's procedural reasonableness

challenge for abuse of discretion . . . ." *United States v. Lee*, 71 F.4th 1217, 1221

(10th Cir. 2023). And, as previously noted, we review for clear error a district

court's assessment of the reliability of evidence presented at sentencing. *Martinez*,

824 F.3d at 1261.

Having already concluded the district court did not clearly err in assessing the

reliability of the police reports and related evidence that were submitted by the

government at sentencing, we in turn conclude the district court did not abuse its

discretion in relying on that evidence as a basis for imposing a sentence above the advisory guideline range. We therefore reject Mr. Ramirez-Navas's procedural reasonableness challenge to his sentence.

C

In his third and final issue on appeal, Mr. Ramirez-Navas challenges the substantive reasonableness of his sentence, arguing the district court "abused its discretion by imposing a sentence that was three times—or 200% greater than—the maximum guideline sentence." Aplt. Br. at 2.

We review the substantive reasonableness of a sentence "under an abuse-of-discretion standard, looking at the totality of the circumstances." *United States v. Hurst*, 94 F.4th 993, 1010 (10th Cir. 2024) (internal quotation marks omitted). Under this standard, "we give substantial deference to the district court and will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted). In other words, "[a] district court abuses its sentencing discretion only if the sentence exceeded the bounds of permissible choice." *Id.* (internal quotation marks omitted). "This substantial deference reflects that the sentencing judge is in a superior position to find facts and judge their import under [18 U.S.C.] § 3553(a) in the individual case." *Id.* (internal quotation marks omitted).

The district court in this case cited a number of factors in support of its decision to impose a sentence above the advisory guideline range. To begin with, in discussing Mr. Ramirez-Navas's history and characteristics, the district court noted

11

the recency of Mr. Ramirez-Navas's three prior convictions. The district court in turn noted that Mr. Ramirez-Navas returned to the United States "after multiple violent attacks against others, including two cases that involved stabbing." R. vol. III at 37. The district court emphasized that, in its view, "returning to the [United States] after committing these crimes [wa]s especially serious." *Id.* The district court also took into account "the speed at which the defendant continued to return to the" United States, including his most recent reentry, which occurred a mere thirteen days after he was removed. *Id.*

In addition to considering Mr. Ramirez-Navas's history and characteristics, the district court concluded that a sentence within the advisory guideline range would not "reflect the seriousness of this offense, coming back into the country after multiple violent convictions," and likewise would not "promote any respect for the law, because the defendant continues to return to the country after convictions for violence." *Id.* at 38–39. Further, the district court concluded a sentence within the advisory guideline range would not "provide just punishment for the offense." *Id.* at 39. And, lastly, the district court concluded that an above-guidelines sentence was necessary both "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes" committed by Mr. Ramirez-Navas. *Id.*

Although Mr. Ramirez-Navas now argues that his prior convictions "were already accounted for with the guideline's criminal history component," the fact of the matter is that, as the district court essentially concluded, the criminal history component, which focuses only on the offenses of conviction, failed to take into

account the serious and violent nature of those prior offenses. Aplt. Br. at 13. Likewise, the criminal history component failed to account for the recency of the offenses or the speed at which Mr. Ramirez-Navas returned to the United States after being removed.

Mr. Ramirez-Navas also argues that the district court's rationale for imposing a sentence above the advisory guideline range "was based almost entirely on the allegedly violent nature of [his] prior convictions." *Id.* We disagree. To be sure, the district court's analysis of several of the § 3553(a) factors included consideration of Mr. Ramirez-Navas's criminal history and the violent nature of those prior offenses. But, importantly, the specific § 3535(a) factors that were emphasized by the district court in selecting an above-guideline-range sentence focused on distinct sentencing goals. These included ensuring the sentence reflected the seriousness of the offense of conviction, promoting respect for the law, providing just punishment for the offense, deterring future criminal conduct by Mr. Ramirez-Navas, and protecting the public from any further crimes committed by him. Notably, Mr. Ramirez-Navas does not address, let alone refute the district court's reasoning regarding, any of these concerns.

In the end, given the district court's stated reasons for imposing an above-guidelines sentence, we have little trouble concluding that the sentence imposed by the district court did not exceed the bounds of permissible choice.

IV

The judgment of the district court is affirmed.


                                    Entered for the Court


                                    Bobby R. Baldock
                                    Circuit Judge